IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES T. TANNER ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 20-cv-1082 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| CITY OF CHICAGO, *et al* ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

Charles Tanner ("Plaintiff") brought this lawsuit against the City of Chicago and Chicago Police Department ("CPD") officers Natalina Bierod, Justin Lawler, and Krystyna Pikul ("Defendants") after being terminated as a Probationary Police Officer ("PPO") from the CPD. [See 1]. The City, Lawler, and Pikul moved to dismiss [15]. For the reasons stated below, Defendants' motion to dismiss [15] is granted in part and denied in part. Additionally, these three Defendants explain that the fourth, Defendant Bierod, has not yet been served. [16, at 1 n.1]. Plaintiff does not dispute this characterization. [See 26]. Pursuant to Federal Rule of Civil Procedure Rule 4(m), Plaintiff must serve Defendant Bierod by March 1, 2021, or the Court will dismiss the action against her without prejudice. Counsel are directed to file a joint status report, including a discovery plan and a statement in regard to any interest in a referral to the Magistrate Judge for a settlement conference, no later than February 1, 2021.

**I.      Background**[1]

Plaintiff is "a white man of European descent." [1, at ¶ 12]. Beginning in June 2014, he worked as a correctional officer with the Cook County Sheriff's Office ("CCSO"). [*Id.*, at ¶ 14]. In September 2017, he requested a leave of absence to begin working as a PPO at CPD. [*Id.*, at ¶ 15]. As a PPO, Plaintiff was covered by the CPD Field Training and Evaluation Manual ("Manual"). [*Id.*, at ¶ 17]. Plaintiff successfully completed training courses and examinations. [*Id.*, at ¶¶ 18–19]. During training, Plaintiff "observed several members of the class struggling to perform the necessary duties of a police officer." [*Id.*, at ¶ 20]. These members included the individual Defendants. [*Id.*].

At the end of training, the Academy received two anonymous complaints about the program, prompting the Academy to require all members of Plaintiff's class to answer a survey about whether they had been harassed or mistreated. [*Id.*, at ¶¶ 22–23]. In response to the survey, Defendants Pikul, Bierod, and Lawler and a fourth non-defendant PPO "claimed to have had problems with a handful of their classmates, including" Plaintiff. [*Id.*, ¶ 25]. Sergeant John Spellman, an investigator from CPD's Bureau of Internal Affairs, was assigned to review the allegations, but "it appears that none of the evidence was reviewed in accordance with the normal standards applied to such investigations." [*Id.*, at ¶ 26]. During the investigation, Plaintiff stated that the allegations against him were false, and he informed Spellman and Sergeant Larry Snelling that there was an "abundance of cheating going on in the Academy." [*Id.*, at ¶¶ 31–33].

Along with Plaintiff, accusations were made against two African American PPOs, one Hispanic PPO, and one white PPO. [*Id.*, at ¶¶ 37–39]. However, no investigation was conducted into the allegations against the African American PPOs, and they "did not so much as make it onto

---

[1] The Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

2

the list of those who were accused." [*Id.*, at ¶¶ 37, 39]. Instead, Deputy Chief Calloway told them that they would be "taken care of." [*Id.*, at ¶ 37]. The white PPO and Hispanic PPO were given 5 and 15-day suspensions.[2] [*Id.*, at ¶ 39]. Plaintiff was the only one of the accused PPOs to be terminated. [*Id.*]. Even though one white PPO was disciplined as a result of the investigation, "CPD only needed one head to roll to put on a show of making it look like it was responding to the anonymous complaints. Eliminating everyone but Caucasian males, the CPD chose [Plaintiff], the whistleblower who had brought up the cheating in the Academy, as the sole person to be terminated." [*Id.*, at ¶ 40].

In July 2018, Plaintiff sought reinstatement at his prior position at the CCSO; however, the CCSO did not reinstate him and ultimately terminated him. [*Id.*, at ¶¶ 46–47, 55]. "On or about March 19, 2019," CPD provided the CCSO a summary report of the investigation into Plaintiff's conduct. [*Id.*, at ¶¶ 52, 75]. CPD did not provide the CCSO with a letter Plaintiff had sent CPD challenging the results and methodology of the investigation, and it did not "provide all exculpatory material." [*Id.*, at ¶ 53]. On April 5, 2019, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR"), and he received a right-to-sue letter from the EEOC and an order of closure from the IDHR. [*Id.*, at ¶¶ 57–59].

Plaintiff filed this complaint on February 13, 2020. [1]. He alleges that (1) the City breached a contract by failing to follow its procedures for conducting investigations and by terminating Plaintiff, [*id.*, at ¶¶ 61–68]; (2) the City engaged in tortious interference with a business expectancy by providing the CCSO with false information, [*id.*, at ¶¶ 69–78]; (3) the City violated 42 U.S.C. § 1981 when it breached a contract by "imposing performance requirements

---

[2] It is unclear from the complaint which individual received which length of suspension.

and punishments on him that were not imposed on similarly situated Counterparts," [*id.*, at ¶¶ 79–93]; (4) the City violated Title VII by terminating him based on his race, [*id.*, at ¶¶ 94–103]; (5) that the individual Defendants engaged in tortious interference with a business expectancy by submitting false complaints against him, [*id.*, at ¶¶ 104–10]; (6) that the City violated the Illinois Human Rights Act ("IHRA") by terminating him based on his race, [*id.*, at ¶¶ 111–21]; and (7) the individual Defendants made defamatory statements against him during the investigation, [*id.*, at ¶¶ 122–32].. The City and individual Defendants Pikul and Lawler moved to dismiss all claims. [15].

## II.     Legal Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint typically must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S at 555). In determining whether the complaint meets this standard, the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth*, 507 F.3d at 618.

"A plaintiff is not required to negate an affirmative defense in his or her complaint * * *." *Stuart v. Local 727, Int'l Bhd. of Teamsters*, 771 F.3d 1014, 1018 (7th Cir. 2014). "[B]ecause affirmative defenses frequently 'turn on facts not before the court at [the pleading] stage,' dismissal is appropriate *only* when the factual allegations in the complaint unambiguously establish all the

elements of the defense." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) (second alteration in original) (quoting *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012)). That is, "[a] litigant may plead itself out of court by alleging (and thus admitting) the ingredients of a defense," but if a litigant does not do so, dismissal based on an affirmative defense is not appropriate. *U.S. Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003).

### III. Analysis

#### A. Breach of Contract Claim

Plaintiff alleges that the City breached a contract when it conducted its investigation in a manner that violated the Manual. [1, at ¶¶ 61–68]. The elements of a breach of contract claim in Illinois are "(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages." *Vill. of S. Elgin v. Waste Mgmt. of Ill.., Inc.*, 810 N.E.2d 658, 669 (Ill. App. 2004). Here, Plaintiff alleges that the Manual created an employment contract. [1, at ¶ 64]. In Illinois, "employment relationships * * * are presumed to be at will." *Cromwell v. City of Momence*, 713 F.3d 361, 364 (7th Cir. 2013). However, Illinois law also "recognizes that employment handbooks have the potential to form contracts between employers and workers." *Moss v. Martin*, 473 F.3d 694, 700 (7th Cir. 2007). An employee handbook can create enforceable contractual rights "if the traditional requirements for contract formation are present," including "a promise clear enough that an employee would reasonably believe that an offer has been made." *Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314, 318 (Ill. 1987).

However, as Defendants explain, the Manual here states on its first page that it "is not a contract or agreement and the terms and conditions of training may be changed without notice.

5

Probationary Chicago Police Officers are 'at will' employees during their first 18 months of continuous service, and may be terminated with or without notice."[3] [16-1, at 2]; see also [16, at 5–6]. Such prominent and explicit disclaiming language is evidence that the Manual did not contain a promise sufficiently clear enough for an employee to "reasonably believe that an offer has been made." *Duldulao*, 505 N.E.2d at 318 (finding that employee handbook created a contract in part because there was no disclaimer); see also *Freeman v. Chi. Park Dist.*, 189 F.3d 613, 617 (7th Cir. 1999) ("The employee handbook specifically disclaims that it is a contract, and the handbook itself is the best evidence of whether the parties intended to form a contract. We need nothing more to conclude that it is not a contract."); *Harrington-Grant v. Loomis, Fargo & Co.*, 2002 WL 47152, at *3–4 (N.D. Ill. Jan. 11, 2002) (collecting cases and determining that disclaimer in employee handbook precluded contract formation). Therefore, the training Manual did not create a contract and the Court dismisses Plaintiff's breach of contract claim.

B. **Title VII and IHRA Claims**

Plaintiff next alleges that the City violated Title VII and the IHRA by terminating him because he is white. [1, at ¶¶ 94–103, 111–121]. Because Illinois courts apply the Title VII framework to IHRA claims, the following analysis applies to both claims. See *Zaderaka v. Ill. Human Rts. Comm'n*, 545 N.E.2d 684, 687 (Ill. 1989). Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-

---

[3] Although the complaint does not quote the Manual, it does reference it [1, at ¶ 17], and the Court may take judicial notice of the Manual's contents without converting the motion to dismiss to one for summary judgment. See *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012) ("Taking judicial notice of matters of public record need not convert a motion to dismiss into a motion for summary judgment."); *Laborers' Pension Fund v. Blackmore Sewer Const., Inc.*, 298 F.3d 600, 607 (7th Cir. 2002) (permitting judicial notice of information on government website).

2(a)(1). "The pleading requirement for employment-discrimination claims is minimal. A plaintiff need only identify the type of discrimination, when it occurred, and by whom." *Clark v. Law Office of Terrence Kennedy, Jr.*, 709 F. App'x 826, 828 (7th Cir. 2017); see also *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013) (explaining that in employment discrimination cases, a plaintiff "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of [his or her protected characteristic]").

As Defendants explain, to establish a *prima facie* case for race discrimination, a plaintiff must show that "(1) he is a member of a protected class; (2) he was performing his job in a satisfactory manner; (3) he was subjected to an adverse employment action; and (4) similarly situated employees were treated more favorably." *Miller v. Chi. Transit Auth.*, 2018 WL 3970144, at *3 (N.D. Ill. Aug. 20, 2018) (citing *Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 254 F.3d 644, 650 (7th Cir. 2001)). In order to satisfy the first element of this test, "[p]laintiffs that are members of a historically favored group must show background circumstances that indicate the employer has reason to discriminate against their group or show facts of 'fishy' circumstances." *Id.*; see also *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 457 (7th Cir. 1999) (establishing first prong of the *prima facie* test for reverse discrimination). Defendants argue that, "[a]t the pleading stage, a plaintiff alleging reverse discrimination must set forth sufficient minimum facts demonstrating background circumstances that implicate reverse discrimination," and that here, Plaintiff failed to do so. [16, at 8].

However, as Plaintiff notes, the Supreme Court held that the *prima facie* analysis in Title VII cases "is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002); see also *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (concluding that *Swierkiewicz* survived *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and

7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). In doing so, the Supreme Court explained that it is incorrect to apply the *prima facie* standard to pleadings, and it emphasized that it had previously "rejected the argument that a Title VII complaint requires greater 'particularity.'" *Swierkiewicz*, 534 U.S. at 511 (quoting *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 n.11 (1976)). To Defendants' point, district courts in this circuit have previously considered whether plaintiffs in reverse race discrimination cases adequately alleged background circumstances, see, *e.g.*, *Paxson v. Cnty. of Cook*, 2002 WL 1968561, at *3 (N.D. Ill. Aug. 23, 2002), and have done so even when recognizing that a plaintiff's complaint need not make out a *prima facie* case, see *Dorson v. Z2 Sys., Inc.*, 2019 WL 4824225, at *2 (N.D. Ill. Oct. 1, 2019). However, the Seventh Circuit has recently criticized this approach in *Stumm v. Wilkie*, 796 F. App'x 292 (7th Cir. 2019). In that case, the district court dismissed a Title VII claim because "there [was] no allegation to satisfy the first element in a reverse discrimination claim." *Id.* at 295. The Seventh Circuit reversed, explaining that "a plaintiff need plead only the type of discrimination, when it occurred, and by whom." *Id.*; see also *Petrovic v. Enter. Leasing Co. of Chicago, LLC*, 513 F. App'x 609, 610–11 (7th Cir. 2013) (reversing district court's dismissal of § 1981 reverse race discrimination claim and explaining that the district court's reliance on a case explaining the background-circumstances test was "misplaced" because that case "addresses the type of evidence that [the plaintiff] would need to submit at summary judgment if he proceeded under the indirect method of proof").

The Court acknowledges that many cases in this district have required reverse-racism complaints to plead background circumstances. See, e.g., *Miller v. Chicago Transit Auth.*, 2018 WL 3970144, at *3 (N.D. Ill. Aug. 20, 2018); *Straub v. Jewel Food Stores, Inc.,* 2018 WL 1993394, at *2–3 (N.D. Ill. Apr. 27, 2018); *Nance v. NBCUniversal Media, LLC*, 2018 WL

1762440, at *3 (N.D. Ill. Apr. 12, 2018); *Schmidt v. Vill. of Glenwood*, 2015 WL 3918952, at *5 (N.D. Ill. June 24, 2015); *Paxson v. Cty. of Cook, Illinois*, 2002 WL 1968561, at *3 (N.D. Ill. Aug. 23, 2002). But *Stumm* clearly holds that a Title VII plaintiff need not "meet a heightened pleading standard to support a claim for reverse discrimination." [30, at 5]. Instead, he "need plead only the type of discrimination, when it occurred, and by whom." *Stumm*, 796 F. App'x at 295. Here, Plaintiff pleads that he was discriminated against on the basis of race by the City when it terminated his employment. [See 1, at ¶¶ 37–40, 65, 90, 99–101]. As such, he sufficiently alleged Title VII and IHRA claims, and the Court declines to dismiss them. See *Tate v. SCR Med. Transp.*, 809 F.3d 343, 345–46 (7th Cir. 2015) (finding that Plaintiff adequately alleged Title VII claim for discrimination on the basis of sex when he stated "I believe I was discriminated against because of my disability, in violation of the Americans with Disabilities Act, my sex, male, and in retaliation for engaging in protected activity").

    **C.**    **42 U.S.C. § 1981 Claim**

Plaintiff alleges that the City violated § 1981 [1, at ¶¶ 79–93], which prohibits racial discrimination in the making and enforcement of contracts. *Campbell v. Forest Pres. Dist. of Cook Cnty.*, Ill., 752 F.3d 665, 669 (7th Cir. 2014). However, as Defendants explain, § 1981 does not create a private right of action, and 42 U.S.C. § 1983 is "the exclusive remedy for violations of § 1981 committed by state actors." *Id.* at 671. A plaintiff "must show that the violation of his 'right to make contracts' protected by § 1981 was caused by a custom or policy within the meaning of *Monell* and subsequent cases." *Id.* at 669 (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735–36 (1989)). Thus, even assuming that Plaintiff sufficiently alleged a constitutional violation, he must also allege facts sufficient to demonstrate that the violation was caused by a City custom or policy or by a decision by a final policymaker. See *Glisson v. Ind. Dep't of Corr.*,

849 F.3d 372, 379 (7th Cir. 2017). As Plaintiff made no such allegations, the Court dismisses his § 1981 claim.

### D. Tortious Interference Claims

Plaintiff next alleges that Defendants interfered with a business activity. In Illinois, "to prevail on a claim for tortious interference with a prospective economic advantage, a plaintiff must prove: (1) his reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." *Fellhauer v. City of Geneva*, 568 N.E.2d 870, 878 (Ill. 1991). Defendants argue that these claims should be dismissed because they are entitled to immunity under the Local Government and Governmental Employees Tort Immunity Act ("Tort Immunity Act"), 745 Ill. Comp. Stat. 10/1–101, and because the claims are time-barred. Both the Tort Immunity Act's "immunity provisions and its statute of limitations provision are affirmative defenses, so the burden is on the defendants to establish that that the [Act] bars liability." *Carroll v. City of Oak Forest*, 2020 WL 2526483, at *6 (N.D. Ill. May 18, 2020). And, as explained above, Defendants are entitled to a dismissal on affirmative defenses "*only* when the factual allegations in the complaint unambiguously establish all the elements of the defense." *Hyson USA, Inc.*, 821 F.3d at 939.

#### 1. Individual Defendants

Plaintiff alleges that the individual Defendants interfered with his employment at CPD by providing false information in their complaints and during the resulting investigation. [*Id.*, at 104–10]. As Defendants explain, Plaintiff's tortious interference claims are subject to the Tort Immunity Act's one-year statute of limitation. 745 Ill. Comp. Stat. Ann. 10/8-101; [16, at 13].

10

"[A] tortious interference with prospective advantage accrues when the prospective advantage is interfered with." *Hi-Lite Prods. Co. v. Am. Home Prods. Corp.*, 11 F.3d 1402, 1410 (7th Cir. 1993). Here, Plaintiff alleges that the individual Defendants interfered with his employment at CPD. Therefore, his claim accrued when his employment with CPD was terminated on July 11, 2018. [1, at ¶ 42]. Plaintiff filed his complaint more than a year later on February 13, 2020. As such, his tortious interference claim against the individual Defendants is time-barred, and the Court therefore dismisses this claim.[4]

### 2. City of Chicago

Plaintiff alleges that the City interfered with his employment at the CCSO when it provided the CCSO with a report of CPD's investigation because it knew the information contained in the report was false. Defendants assert that this claim also is time-barred. [30, at 7]. Although Plaintiff sought reemployment with the CCSO on July 13, 2020, the complaint does not state when he was terminated by the CCSO. [1, at ¶ 46]. Plaintiff also alleges that the City provided the CCSO with "false and incomplete information on or about March 19, 2019." [*Id.*, at ¶ 75]. Because the Plaintiff does not allege facts that "unambiguously establish all the elements of the defense," the Court cannot conclude from the pleadings that his tortious interference claim against the City is time-barred. *Hyson USA, Inc.*, 821 F.3d at 939.

Defendants also argue that the City is immune to the tortious interference claim filed against it. The Tort Immunity Act provides that "[a] local public entity is not liable for injury caused by any action of its employees that is libelous or slanderous or for the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book

---

[4] Plaintiff argues that his state law claims were tolled when he filed his EEOC complaint. [26, at 6–7]. However, Plaintiff's state law claims are "separate from, and independent of," his federal racial discrimination ones, and these state law claims were not tolled when he filed his EEOC complaint. *Juarez v. Ameritech Mobile Commc'ns, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992).

or other form of library material." 745 Ill. Comp. Stat. Ann. 10/2-107. Important here, section 2-107 does not only apply to defamation claims; instead, it applies to claims based on injuries caused by libelous or slanderous actions by employees of a local public entity. See *Ramos v. City of Peru*, 775 N.E.2d 184, 188 (Ill. App. 2002) (finding City entitled to section 2-107 immunity and dismissing claims of false light invasion of privacy and personal injury); *Davis v. Bd. of Educ.*, 2020 WL 1848205, at *6 (N.D. Ill. Apr. 13, 2020) (dismissing false light claim because defendant was entitled to section 2-107 immunity); *cf. ATC Healthcare Servs., Inc. v. RCM Techs.*, Inc., 282 F. Supp. 3d 1043, 1054 (N.D. Ill. 2017) (not dismissing tortious interference claim based on section 2-107 immunity because the plaintiff did not allege that the defendant's employees made libelous or slanderous statements). Here, Plaintiff's tortious interference claim against the City arises out of defamatory statements made to the CCSO. [1, at ¶¶ 69–78]. Because the injury was caused by defamatory statements, the City is entitled to immunity under section 2-107 of the Tort Immunity Act. Therefore, the Court dismisses Plaintiff's tortious interference claim against the City.

### E. Defamation Claim

Finally, Plaintiff brings a defamation claim against the individual Defendants based on their complaints and statements made during the investigation. [1, at ¶ 111–121]. Defendants assert that these claims are time-barred. As with the tortious interference claim, the defamation claim is subject to a one-year statute of limitations under the Tort Immunity Act. 745 Ill. Comp. Stat. Ann. 10/8-101. The individual Defendants made these statements prior to Plaintiff's July 11, 2018 termination. "The statute of limitations on a defamation count in Illinois generally begins to run on the date of publication of the allegedly defamatory material."[5] *Hukic v. Aurora Loan Servs.*,

---

[5] The Court notes that the Plaintiff does not invoke the exception to this rule: that the discovery rule applies when a publication was "hidden, inherently undiscoverable, or inherently unknowable." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 435 (7th Cir. 2009) (quoting *Blair v. Nev. Landing P'ship,* 859 N.E.2d 1188, 1195 (Ill. App. 2006)).

588 F.3d 420, 435 (7th Cir. 2009). Therefore, Plaintiff's defamation claim is time-barred, and the Court dismisses it.

**IV.     Conclusion**

For the reasons stated above, the Court grants in part and denies in part Defendants' motion to dismiss [15]. Specifically, the Court grants the motion with respect to Plaintiff's breach of contract claim, § 1981 claim, tortious interference claims, and defamation claim. The Court denies the motion with respect to the Plaintiff's Title VII and IHRA claims. Counsel are directed to file a joint status report, including a discovery plan and a statement in regard to any interest in a referral to the Magistrate Judge for a settlement conference, no later than February 1, 2021. Finally, pursuant to Federal Rule of Civil Procedure Rule 4(m), Plaintiff must serve Defendant Bierod by March 1, 2021, or the Court will dismiss the action against her without prejudice.

Dated: January 20, 2021

                                                    Robert M. Dow, Jr.
                                                    United States District Judge